IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

ENTERED
05/28/2009

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| THOMAS LUU, | ) | CASE NO. 08-36517-H3-7 |
| | ) | |
| Debtor | ) | |
| | ) | |

## MEMORANDUM OPINION

The court held a hearing on the Chapter 7 Trustee's Amended Motion to Dismiss and Motion to Show Cause (Docket No. 17) and has considered the Debtor's Response and Debtor's Motion To Remove Chapter 7 Trustee For Cause (Docket No. 24), the pleadings, docket sheet and entire file in the above captioned matter along with the evidence, testimony, and argument of counsel.  The following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered dismissing the above captioned case with prejudice and issuing sanctions against Debtor's counsel, Cam Ngoc Trinh.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

## Findings of Fact

Thomas Luu ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 8, 2008 and is

represented by Cam Ngoc Trinh.  The initial meeting of creditors was held on November 17, 2008.  The initial schedules were filed on October 8, 2008.  Docket No. 1.  Debtor appeared with counsel but there were discrepancies in his schedules and statement of financial affairs.  The meeting was continued to December 1, 2008 in order for a translator to be present (as Debtor is Vietnamese and is not fluent in English) and to allow Debtor to produce documents in support of some of the information contained in the schedules and statement of financial affairs.

At the time of the December 1, 2008 creditors' meeting, no amendments to the schedules or statement of financial affairs had been filed.  The creditors' meeting was again continued to December 15, 2008 and has not been concluded.

The schedules and Statement of Financial Affairs list no income for the years 2006 and 2008, despite the fact that Debtor's Divorce Decree, dated August 31, 2007, reflects he and his ex-spouse operated businesses during 2006 and 2007.  Debtor listed $3,722 in income for the year 2007 from self employment.[1] Docket No. 1, Schedule I and Statement of Financial Affairs, Question No. 1.  Further, Debtor produced documents which reflect that he and his ex-wife refinanced a home in California sometime during March and April 2006 and received approximately $147,000.

---

[1] Debtor filed an Amended Statement of Financial Affairs on January 22, 2009 with no income reflected for year 2008, income of $4,005 for year 2007 from self employment and a negative figure of "-$5,537" for year 2006 from "Operation of Business."  Docket No. 20.

Although the refinancing is not income, it does show that Debtor had the ability to qualify for a mortgage in the amount of approximately $443,000.  Trustee's Exhibit Nos. 9 and 10. Further, Schedule I, Current Income, Item No. 13 requires a debtor to list "Other Monthly Income."  Debtor testified that he receives money from his children on a monthly basis to pay his living expenses.  As an explanation that this money was not "income" that had to be included on his schedules, Debtor testified that he does not receive the same amount each month. Further, despite his claiming no income, the 2016(b) statement filed by Debtor's counsel, Trinh, lists the fee for this case as $3,500 and states that it was paid by Debtor.

The Divorce Decree reflects that Debtor received the refinanced real property in California.  The Divorce Decree also references personal property, furnishings and jewelry in Debtor's possession that were to remain his property.  These include all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, clothing, jewelry, other personal effects, and cash.  Trustee's Exhibit No. 6.

The only assets listed in Debtor's initial schedules were wearing apparel (valued at $120) and a checking account (valued at $32.25).  Although no jewelry was listed on his initial schedules, at one of the creditors' meetings Debtor was wearing a man's Seiko watch and, in response to the Trustee's question, Debtor testified that he owned the watch prior to

3

filing bankruptcy.

Debtor testified that he advised his attorney that he owned no jewelry because he did not consider a watch to be jewelry.  Debtor testified that he only wears it once in a while and that it has no value due to its age.  The Trustee testified that, at the creditors' meeting, Debtor's counsel objected to the Trustee's inquiries regarding the watch on the basis that the watch was of inconsequential value.

Debtor listed five creditors, all with unsecured claims, the largest of which is Bank of America.  Bank of America was the lender for the refinancing of the real property in California.  Trustee's Exhibit Nos. 9 and 10.  Although it is listed as an unsecured debt in the amount of $411,006.62, the claim is described as based upon a "Foreclosed Mortgage, Subject to Setoff."  In the Statement of Financial Affairs under "Repossessions, foreclosures and returns," Bank of America and the California property is listed with a statement that the "house was repossessed by Bank of America, and sold to Fannie Mae for $443,445.45 via a Trustee's sale on 5/30/08" and that the "house is currently in the process of foreclosure."  Three of the unsecured claims are based upon credit card debt in the approximate total amount of $68,186.  The fifth creditor is owed $4,717 on a personal loan.

The Trustee testified that he has been a chapter 7 Trustee since 1991 and has administered thousands of chapter 7

bankruptcy cases.  He testified that it is atypical to have so few assets and to have unsecured debt of this magnitude.

The Trustee testified credibly that at each creditors' meeting, the Trustee advised the Debtor and his counsel, Trinh, to amend the schedules and statement of financial affairs so they would be consistent with the underlying documents in support and so they would be accurate and include all available information. Subsequent to the Trustee's requests, no pleadings were filed to rectify the deficiencies which the Trustee had identified.  Thus, the Trustee filed the instant motion to dismiss and request for sanctions on January 8, 2009.

On January 22, 2009, after receiving the Trustee's dismissal motion and sanctions request, Debtor, through his counsel, responded to the motion and moved for removal of the Trustee (Docket No. 21 and 24) and filed Amended Schedules B, C, and J (Docket No. 19) and an Amended Statement of Financial Affairs (Docket No. 20).  Amended Schedule B, Personal Property, added the watch as an asset under jewelry and valued it at $5.00. Initial Schedule C, Exemptions, showed a claim of exemptions without listing any property which was claimed as exempt. Amended Schedule C added the three assets comprising Debtor's personal property (with a total value of $157.25).  Amended Schedule J, Current Expenditures, reduced Debtor's monthly expenses from $963 to $628 as a result of deleting his housing expense of $300 and reducing his clothing expense from $55 to

$20.  The Debtor testified that he lives with a friend.  The Amended Statement of Financial Affairs changes the 2006 income from the operation of a business from zero to a loss of $5,537 and reflects an increase in income for the year 2007 from $3,722 to $4,005.

Debtor's Amended Statement of Financial Affairs still contains inaccurate information.  Question 1 requires Debtor to state the gross amount of income debtor has received from employment, trade, or profession, or from the operation of the debtor's business, during a calendar year.  Debtor's response reflected no income for year 2008, income of $4,005 for year 2007 from self employment and a negative figure of "-$5,537" for year 2006 from "Operation of Business."  Docket No. 20.  Debtor's income tax return for year 2006 reflects gross income from the operation of two businesses, one in the amount of $20,436 and one in the amount of $8,100, for a total of $28,536.  Trustee's Exhibit No. 7.  Debtor's income tax return for year 2007 reflects gross receipts from the operation of a business in the amount of $4,250.  Trustee's Exhibit No. 8.

Question 10 of the Debtor's Amended Statement of Financial Affairs requires a debtor to list all property transferred, other than in the ordinary course of business or financial affairs, within the two years prior to the date of the bankruptcy filing.  Debtor marked the box indicating that none existed.  At a minimum, Debtor failed to list the transfer of the

6

property to his ex-wife pursuant to the Divorce Decree which was dated August 31, 2007.

Schedule B requires a debtor to list all personal property in which he has an interest, including any property held for the debtor by someone else.  Debtor testified that when he moved to Texas he took all the household furnishings from the California residence with him.  However, Debtor testified that at the time he filed bankruptcy, he had no furnishings because they were either given away, thrown out because they were old or damaged, or left outside at his ex-wife's house in Houston. Debtor's explanation for not listing the furnishings were that they were not in his possession, that he did not use them and that they were old and of no value.  Debtor testified that he did not own any property other than the personal assets listed on Amended Schedule B: wearing apparel valued at $120; a checking account valued at $32.25; and a man's watch valued at $5.  Taking into account the allowances to be made while working through a certified translator, the court nonetheless found this testimony not credible.

Amended Schedule J is also inaccurate.  The petition reflects Debtor's mailing address to be a post office box, yet there is no corresponding expense listed on Schedule J for this box.  Debtor testified that this expense is paid for by one of his children so he did not include it as an expense.

The Trustee testified that, while examining Debtor under oath at the creditors' meetings, Debtor gave non-responsive answers to his questions and was indifferent to the discrepancies in Debtor's schedules.  Trustee testified that of the thousands of creditors' meetings he has conducted, only a few hundred required translators and of those, only a handful were required to be reset as a result of difficulty in obtaining information from the debtors or their counsel.  The Trustee testified that this case was especially difficult because of the Debtor's lack of candor and Trinh's failure to recognize the importance and significance of accurate and complete documents upon filing a bankruptcy proceeding.  The court finds that the Debtor was not credible.  The court finds that the Debtor failed to cooperate with the Trustee intentionally and Debtor has not demonstrated an interest in the legitimate process of bankruptcy.

Debtor's counsel, Trinh, charged a fee of $3,500 for the prosecution of the instant bankruptcy case.  To charge a fee this high, an attorney would be expected to have the skill and competence to complete the required filings in a timely manner. The court finds that Trinh's handling of this case was inadequate and incompetent.  The court finds that Trinh's lack of understanding of basic bankruptcy law, federal civil procedure, and the federal rules of evidence contributed to delay in the administration of this estate, which was prejudicial to creditors.

8

The initial creditors' meeting was held and was reset two times and has not yet been concluded, partly due to the fact that Trinh failed to obtain accurate and complete information from her client.  Trinh failed to amend the Schedules and Statement of Financial Affairs until after the Trustee filed his dismissal motion and sanctions request.  The multiple discrepancies and inadequacies in the Schedules and Statement of Financial Affairs discussed above have not been cured to date. Trinh did not understand that Debtor's receipt of money from his children was considered "income" that had to be included on Debtor's schedules.  Trinh did not think it was significant to list Debtor's watch because it was old and was claimed to be of inconsequential value.  Trinh, in her closing argument, stated that she did not list each of Debtor's assets on the initial Schedule C, Exemptions, because they were minimal in value and that her mistake did not result in prejudice to creditors.  Trinh submitted, as an explanation for not listing the furnishings from Debtor's California residence on Schedule B, that the furnishings were not in Debtor's possession, Debtor was not using them, they were old and of no value.

Trinh was not prepared for the hearing on the Trustee's Amended Motion to Dismiss and Motion to Show Cause or the Debtor's Motion To Remove Chapter 7 Trustee For Cause.  Trinh's handling of the hearing reflects her lack of understanding and competency as to the presentation of evidence and examination of

witnesses.  On direct examination of Debtor, Trinh posed leading questions and the court had to explain to her what constituted a leading question.  Trinh presented argument while examining the witness.  The court had to inform Trinh she was required to show her exhibits to the Trustee.  Trinh did not understand why her second witness, an employee of the Trustee, was not present at the hearing.  The court had to explain to Trinh that she had to issue a subpoena or have an agreement with the Trustee in order to have her witness present.

Conclusions of Law

Section 707(a) of the Bankruptcy Code provides:

(a)  The court may dismiss a case under this chapter only after notice and a hearing and only for cause including--

    (1)  unreasonable delay by the debtor that is prejudicial to creditors;

    (2)  nonpayment of any fees or charges required under chapter 123 of title 28; and

    (3)  failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a).

Section 707(a) does not provide an exhaustive list of factors to be considered in determining whether good cause exists to dismiss a bankruptcy petition.  Whether sufficient cause exists for dismissal depends on the equitable considerations and

the particular facts of the case.  The court must balance the equities and weigh the benefits and prejudices of dismissal. Matter of Atlas Supply Corp., 857 F.2d 1061 (5th Cir. 1988).

Debtor and his counsel, Trinh, have unreasonably delayed the bankruptcy process by their failure to cooperate with the Chapter 7 Trustee, their failure to provide the Trustee with accurate and complete supporting documentation, their failure to file accurate and complete schedules and Statement of Financial Affairs, and their resistence to correcting the deficiencies in the schedules and Statement of Financial Affairs until confronted with dismissal of the case and possible sanctions.

The court concludes that Debtor's actions in delaying the administration of this case was prejudicial to the rights of creditors.  The court concludes, based on the totality of the circumstances, that the above captioned case should be dismissed with prejudice to Debtor's filing of another case under Title 11 within 180 days of the date of entry of the Judgment dismissing the instant case.

11 U.S.C. § 105 provides that the court may issue any order, take any action, or make any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.  Bankruptcy courts have statutory authority to conduct civil contempt proceedings pursuant to section 105, the purpose of which is to coerce compliance with a court order or to compensate another party for the contemnor's

11

violation.  *Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d
609 (5th Cir. 1997).

Attorneys who practice before a bankruptcy court must
concern themselves with the obligations set forth in the
Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.
Bankruptcy judges have the power to discipline attorneys for
bankruptcy-related misconduct.  *Wright v. United States (In re
Placid Oil Co.),* 158 B.R. 404 (Bankr. N.D.Tex. 1993);  *Cunningham
v. Ayers (In re Johnson),* 921 F.2d 585 (5th Cir. 1991).  A
federal court, including a bankruptcy court, has the inherent
power and authority to regulate the practice of law before it.
*In re Snyder*, 417 U.S. 634, 643-44 (1985); *Resolution Trust Corp.
v. Bright,* 6 F.3d 336, 340 (5th Cir. 1993); *In re Placid Oil Co.,*
158 B.R. at 413.  This power encompasses the authority to suspend
or otherwise discipline any attorney practicing before it, as
well as to impose serious sanctions.  *In re Derryberry*, 72 B.R.
874, 880-81 (Bankr. N.D. Ohio 1987);  *see In re Lowe,* 18 B.R. 20,
25-26 (Bankr. N.D.Ga. 1981).  Further, the court may sanction an
attorney if a disciplinary matter arises from a bankruptcy case
dealing with administration of an estate.  28 U.S.C. § 157(b)(1);
*Placid Oil*, 158 B.R. at 418.

The admission, designation and discipline of attorneys
practicing before this court are governed by Southern District
Local Rule 83.1 and Bankruptcy Local Rule 1001(e).  The Texas

12

Disciplinary Rules of Professional Conduct, made applicable to
attorneys appearing before the courts of the Southern District of
Texas pursuant to District Local Rule Appendix A, Rule 7, apply
to Trinh.  An attorney may be sanctioned pursuant to FRCP 11, and
Bankruptcy Rule 9011, for violations of the Disciplinary Rules of
Professional Conduct, and inherently by the court before which
the attorney appears.  Southern District Local Rule Appendix A,
Rule 10.

     Texas Disciplinary Rule 3.03 requires candor toward the
tribunal.  The filing of a bankruptcy proceeding, including
filing Schedules and Statement of Financial Affairs with
discrepancies and inaccuracies and the failure to amend those
schedules upon repeated requests by the Trustee, until confronted
with the Trustee's dismissal and sanctions motion, indicates
Trinh's lack of regard for the accuracy of the information
contained therein and Trinh's lack of candor with the court.

     Although she was previously admitted to practice before
the court of the Southern District of Texas, Trinh allowed her
membership to lapse in October 2008.  The court allowed her to
appear for the hearing on the instant motion but instructed her
to renew her membership.  As of the date this Memorandum Opinion
was signed, the records of the Clerk of Court, Attorney
Admissions, Southern District of Texas reflect that she has not
done so.  The actions of Debtor and Trinh have caused the Trustee
to incur unnecessary expenses and attorney's fees.  The court

finds that an award of $1,000 is reasonable to compensate the Trustee for his fees and expenses in connection with the additional services the Trustee was required to render as a result of the actions of Debtor and Trinh in the instant case. This award is based upon $250 per hour for four (4) hours for the following services: appearance at two additional creditors' meetings (.5 hours for each reset for 1.0 hour total); preparation of and filing the Motion and Amended Motion to Dismiss (1.0 hour); preparation for (.5 hour) and attendance at (1.5 hours) the hearing on the instant motion.

The court sanctions Trinh and requires disgorgement of the $3,500 attorney's fees she received in connection with filing and prosecuting Debtor's bankruptcy case.  Of this, $1,000 shall be paid to the Trustee as reimbursement for his expenses and attorney's fees, and $2,500 shall be paid to the Clerk of Court. As additional sanctions, the court requires that Trinh attend a minimum of sixteen (16) hours of continuing legal education courses, with at least 8 hours devoted to basic consumer bankruptcy law and at least 8 hours devoted to federal trial procedure.

Based on the foregoing, a separate Judgment will be entered dismissing the above captioned case with prejudice to Debtor's filing of another case under Title 11 within 180 days of

the date of entry of the Judgment dismissing the instant case and a Judgment will be entered sanctioning Debtor's counsel, Trinh.

Signed at Houston, Texas on this 28th day of May, 2009.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

15